IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KASSANDRA ERNST, | ) | CASE NO. 3:07 cv 3871 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Kassandra Ernst's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS.

## I. PROCEDURAL HISTORY

On February 27, 2004, Plaintiff filed an application for Supplemental Security Income benefits, alleging a disability onset date of August 1, 1990 due to limitations related to hepatitis C, pancreatitis, heart problems, chronic obstructive pulmonary disease, back pain, depression, and anxiety. On April 20, 2007, Administrative Law Judge ("ALJ") Yvonne K. Stam determined Plaintiff had the residual functional capacity ("RFC") to perform unskilled medium

work that does not require a fast pace of production, much interaction with others, or change in the work place or setting and, therefore, was not disabled (Tr. 28-37). On appeal, Plaintiff claims the ALJ's decision was not supported by substantial evidence.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Born on August 13, 1961, (age 45 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§404.1563, 416. 963. Plaintiff last completed high school and has past relevant work as a cashier/clerk, department store clerk, grocery store clerk, and on a temporary assignment to a factory job on a paint line. (Tr. 81, 101, 505-08).

### B. Medical Evidence

In April 2004, Plaintiff underwent a consultative examination by Marion Dunn, D.O., a board-certified psychiatrist, at the state agency's request (Tr. 168). She admitted to thinking that if she did not have children, she would "take something" to harm herself (Tr. 169). Dr. Dunn noted that Plaintiff had divorced her husband in 1992, but still lived with him (Tr. 168). She had taken Zoloft in the past but no longer had insurance (Id.). She admitted to having two panic attacks a week, each lasting 20 minutes to one hour (Tr. 169). Dr. Dunn noted that Plaintiff described her panic attacks as "heart palpitations, sweating, shaking, trembling," and that they cause her to want to run outside (Id.). Plaintiff reported that she was afraid of crowds and tried to take someone with her, such as her brother or sister, when she went outside. (Id.).

On examination, Plaintiff exhibited coherent speech and noted no expressive or receptive aphasia (language processing difficulty) (Tr. 169). Dr. Dunn opined that Plaintiff could understand and follow instructions (Tr. 170). However, she was not able to complete serial 7s

all the way (Tr. 169). Dr. Dunn felt that Ms. Ernst appeared "very tired and beat down with little hope for the future" (Id.). Dr. Dunn diagnosed major depression, recurrent with suicidal ideation (Tr. 170). She noted a current Global Assessment of Functioning ("GAF") score of 50 (Id.). She also noted that Plaintiff might not fare well in maintaining attention with others in a work setting, due to anxiety (Id.). Dr. Dunn concluded Plaintiff's ability to withstand the stress and pressures of everyday work was markedly compromised (Id.). According to Dr. Dunn, without prior stabilization of depression, Plaintiff could not work in a non-public work environment on simple job tasks (Id.).

In May 2004, state agency psychologist Steven Meyer, Ph.D., reviewed the evidence and opined that Plaintiff was mildly restricted in her activities of daily living, moderately restricted in maintaining social functioning, and had no difficulties maintaining concentration, persistence or pace (Tr. 190). Dr. Meyer noted that the medical evidence from October 2003 through March 2004 did not support the presence of suicidal ideation, hallucination, or depression (Tr. 195). Dr. Meyer noted that records from November through March 2004 failed to show significant psychological symptoms, that Plaintiff's allegations to the consultative examiner were not consistent with findings in the medical evidence, and that the consultative examiner's conclusions about stress were given lesser weight (Id.). Dr. Meyer concluded that Plaintiff would be able to perform two to three step tasks with simple directions and should avoid working with the public (Id.).

Plaintiff sought out treatment from Unison Behavioral Health Group in June 2004 (Tr. 218). She was offered group counseling, but declined (Id.). Ms. Ernst denied feeling suicidal at the time of her intake (Tr. 223). Plaintiff stated that she had hallucinations when she felt very

depressed (Id.). She reported having trouble focusing her thoughts and concentrating, and she slept about five hours a night (Id.). Plaintiff reported previous addiction to morphine and Demerol since the age of 22 (Id.). She reported that she had last used drugs a year earlier (Id.). The evaluator noted that Plaintiff's insight and judgment were impaired (Id.). The diagnostic impression was bipolar disorder, panic disorder with agoraphobia, and opioid dependence in sustained full remission (Tr. 224). Plaintiff was assigned a GAF score of 52 (Id.).

In August 2004, Plaintiff underwent evaluation by Usha Salvi, M.D., at Unison Behavioral Health Care (Tr. 209). Plaintiff reported feeling depressed and hearing voices (Id.). She had occasional episodes of euphoria where she felt very happy and could do a lot of things around the house (Id.) However, most of the time she stayed in her bedroom (Id.) She had a normal appetite and had no difficulties carrying out daily activities, although she claimed they required more time (Id.). She occasionally attended church with her sister. (Tr. 210). She admitted prior abuse of alcohol, heroin (intravenous), and narcotic medications (Tr. 211). On testing of serial 3s, Plaintiff showed impaired concentration (Id.). Dr. Salvi's diagnostic impression was dysthymic disorder and anxiety disorder (Tr. 212). Opioid dependence was in sustained full remission (Id.). He opined that Plaintiff's depression and anxiety symptoms could be secondary to the opiate withdrawal, caffeine use, and a lack of education about coping strategies (Id.). Dr. Salvi assigned a GAF score of 53 and prescribed Zoloft (Id.). He noted that Plaintiff needed to continue on her methadone treatment and slowly wean herself off of it (Id.).

In September 2004, state agency psychologist John Waddell, Ph.D., reviewed the evidence and opined that Plaintiff was mildly limited in her activities of daily living and moderately limited with respect to social functioning and maintaining concentration, persistence

or pace (Tr. 236). Translating these criteria into functional limitations, Dr. Waddell opined that Plaintiff had the cognitive capacity to complete a variety of tasks, and specifically, retained the capacity to complete tasks that did not require a rapid or consistent pace (Tr. 241). Additionally, Dr. Waddell opined that Plaintiff was limited to work that did not involve much interaction with others, but was "able to interact on a superficial basis in order to ask questions and receive instructions" (Tr. 241). He opined that Plaintiff would have difficulty traveling to unfamiliar places (Id.).

Plaintiff continued to attend therapy and psychiatric appointments at Unison (Tr. 203-08; 243-250, 286-304). On August 25, 2004, for example, Ms. Ernst reported she continued to have anxiety when leaving the house (Tr. 203). She had a panic attack at a store when she could not find her sister (Id.). In December 2004, Plaintiff stated that she felt better on an increased dosage of Zoloft (Tr. 297). In January 2005, Plaintiff stated that she was doing much better on Zoloft, felt more energetic, and could cook and clean as well as check in on her daughter (Tr. 295). In March 2005, Ms. Ernst reported significant improvement and felt she was able to get out on her own (Tr. 293). She told Dr. Salvi that she could go grocery shopping on her own and visit family members independently (Id.). She did not feel as depressed, had more "up" days, and was increasing her activities (Id.). She also enjoyed walking her dog (Id.). Plaintiff reported that her symptoms lessened when she took her medication, and she was able to get out more on her own (Id.).

Plaintiff reported to Dr. Salvi in April 2005 that she was not doing well, and she was referred to Rescue Crisis for assistance (Tr. 292). At the time, Plaintiff reported that she was very depressed (Tr. 395). She thought it would be "easier to check out quietly" because she was

too great of a burden on her family (Id.). Plaintiff reported that she was experiencing a lot of anger and reliving traumatic experiences (Tr. 397). She felt guilty because she had relapsed on cocaine the prior week after over one year of sobriety (Tr. 399). Plaintiff was diagnosed with major depression, recurrent moderate, and cocaine abuse (Id.). Her GAF score was 45 (Id.). She was admitted for stabilization (Id.).

In June 2005, Dr. Salvi reported that Plaintiff was doing very well and undergoing methadone treatment (Tr. 290). She was spending a lot of time reading and planting flowers (Id.). Plaintiff was using her new coping techniques in her daily life when feeling anxious (Id.). Dr. Salvi's July 2005 notes indicate that Plaintiff was sleeping well and that her medication was working (Tr. 288).

In October 2005, Dr. Salvi noted that Plaintiff was cooperative, pleasant, and appropriately groomed (Tr. 286). She displayed euthymic mood (Id.). Dr. Salvi encouraged her to attend Alcoholics Anonymous and Narcotics Anonymous meetings regularly and to take walks (Id.).

Dr. Salvi's progress notes from February through August 2006 indicate that Plaintiff had good mood and euthymic affect (Tr. 243-51). She reported getting into religious services at church and reading the Bible (Tr. 250). In February 2006, Plaintiff reported doing well overall in terms of sleeping and interactions with others (Id.). She denied side effects (Id.). She reported taking care of her granddaughter during the day (Tr. 247). In April 2006, Dr. Salvi encouraged Plaintiff to improve her exercise and nutrition (Tr. 248).

## C. Hearing Testimony

Plaintiff testified at the September 2006 administrative hearing that she had "heard voices" in the past (Tr. 487-89). She felt depressed and confused, but claimed that she felt much better with proper medication and treatment (Id.). She was seeing a psychiatrist, whom she called only occasionally when she was feeling down (Id.). Plaintiff testified that once she began taking medication, she no longer experienced hallucinations (Id.). She claimed she had panic attacks once every week to ten days, which represented a decrease after she went into counseling and learned proper coping skills from her psychiatrist (Tr. 496-97). Plaintiff testified that she did laundry and shopped for groceries with assistance from family members (Tr. 495). She did chores around the house, such as helping with dishes and making beds (Id.). Plaintiff wrote in her journal for a few hours a day (Tr. 498). She played and read to her grandchild (Tr. 500). Plaintiff stated that she had been addicted to opiates and underwent counseling and methadone maintenance (Tr. 502). She claimed she had been drug-free for seven years (Id.). She was still taking methadone daily (Tr. 503).

Vocational Expert ("VE") Charles McGee also testified at Plaintiff's administrative hearing (Tr. 508). The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, educational background, and prior relevant work experience, who was limited to tasks that did not involve rapid or consistent pace, or much interaction with others (Tr. 509). Additionally, the individual's work location must remain relatively unchanged (Tr. 510). In response, the VE testified that such a hypothetical individual could perform work as a photocopy machine operator (750 jobs in the Toledo area), microfilm processor (400-450 local jobs), and machine

feeder (1,000 to 1,500 local jobs) (Tr. 513). The VE also testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") (Tr. 505, 514).

### III. DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. § 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. § 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the

opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

### A. The ALJ's Treatment of Dr. Waddell's Opinion

Plaintiff first claims the ALJ erred by accepting some of the limitations assessed by state agency psychologist Dr. Waddell while rejecting others without limitation. Specifically, Plaintiff claims the ALJ erred by ignoring the limitation that she could not complete tasks requiring a consistent pace. Plaintiff maintains that there is no evidence she can perform the jobs identified by the VE if she cannot perform tasks at a consistent pace. Plaintiff's arguments are not well taken.

Dr. Waddell reviewed the record evidence and filled out a Psychiatric Review technique form and Mental RFC form in September 2004 (Tr. 226). Dr. Waddell concluded that Plaintiff had no episodes of decompensation, mild restriction in activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 236). He concluded that Plaintiff's allegations were partially credible and that she would be able to complete a variety of tasks that do not require rapid or consistent pace or much interaction with others (Tr. 241). Dr. Waddell further concluded Plaintiff would be able to

interact on a superficial basis in order to ask questions and receive instructions, but she would have difficulty traveling to unfamiliar places and handling change in routine (Id.).

The Social Security regulations require an ALJ to consider the findings of a state agency medical or psychological consultant and, unless the claimant's treating source is given controlling weight, explain the weight given to the consultant. 20 C.F.R. 416.927(f)(2)(ii). The ALJ in the present case noted Dr. Waddell's September 2004 opinion (Tr. 24). The ALJ explained that Dr. Waddell's conclusions were consistent with a moderate limitation in Plaintiff's ability to maintain social functioning and maintain concentration, persistence or pace (Id.). The ALJ stated that he gave great weight to Dr. Waddell's opinion because it was consistent with and supported by the medical evidence of record (Tr. 26). The ALJ ultimately concluded that Plaintiff retains an RFC for medium exertional level work activity that does not require a fast pace of production, much interaction with others, or change in the work place or setting (Tr. 19). Thus, the ALJ explained that he gave great weight to Dr. Waddell's conclusions in discharge of his obligations under the Social Security Regulations.

Although the ALJ did not explain why he did not expressly adopt the consistent pace limitation, any error in this regard is harmless. The ultimate burden to establish an entitlement to benefits rests with the claimant. Accordingly, courts have recognized that although the Commissioner has the burden to prove there are jobs existing significant numbers that the claimant can perform, the claimant retains the burden to prove that he cannot in fact perform the jobs suggested. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Millet v. Schweiker*, 662 F.2d 1199, 1201 (5th Cir. 1981). In the present case, Plaintiff was represented by counsel at her administrative hearing. Plaintiff's counsel posed questions to the VE who testified at the

hearing. However, Plaintiff's counsel did not pose any hypothetical questions to the VE that included a consistent pace limitation. Thus, Plaintiff cannot establish that the outcome of her benefits claim would have been different if the ALJ had fully adopted this limitation. Accordingly, the Court concludes that the ALJ's treatment of Dr. Waddell's opinion does not warrant remand.

### B. The ALJ's Treatment of Dr. Dunn's Opinion

Plaintiff next claims the ALJ erred by failing to properly evaluate the opinion of consultative psychiatrist Dr. Dunn using the factors set forth in the regulations at 20 C.F.R. § 416.920(d).

The weighing of medical evidence is the province of the Commissioner. Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the ALJ to resolve those conflicts. *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see also Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988). The ALJ, however, is bound by the Social Security regulations when doing so. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544, 545 (6th Cir. 2004). In deciding whether a claimant is disabled, the ALJ is required to consider and evaluate every medical opinion received. 20 C.F.R. § 927(b) and (d). Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. *Id.* at (d).

Dr. Dunn performed a psychiatric evaluation in April 2004 (Tr. 168).  In her report, she concluded that Plaintiff's mental ability to withstand the stress and pressure of everyday work appeared markedly compromised in terms of motivation, concentration, and mood (Tr. 170).  Dr. Dunn diagnosed major depression, recurrent with suicidal ideation, hepatitis C, hypertension, COPD, a history of cervical cancer, and psychosocial and environment stressors (Id.).  The ALJ noted Dr. Dunn's evaluation, Plaintiff's reports at the evaluation, Dr. Dunn's diagnostic impression, and Dr. Dunn's conclusion that Plaintiff's ability to withstand the stress and pressure of everyday work appeared markedly compromised (Tr. 22).  Thus, it is clear from the ALJ's written decision that she considered Dr. Dunn's evaluation.

However, it is not clear whether the ALJ gave any treating source's opinion controlling weight.  Plaintiff does not argue that the ALJ failed to address or accord controlling weight to any treating source opinion in the record.  And, the record does not appear to include any treating source opinions containing conclusions with respect to Plaintiff's specific functional limitations.  Accordingly, the ALJ did not explicitly reject or accept any treating source opinion in her written decision.

Assuming the ALJ did not accord controlling weight to a treating source's opinion, her evaluation of Dr. Dunn's opinion is satisfactory under the Social Security regulations.  The ALJ identified Dr. Dunn as a psychological consultant who performed an examination of Plaintiff at the request of the state agency in April 2004.  The ALJ's decision thus confirms that she considered the length of Dr. Dunn's treatment relationship with Plaintiff, the frequency of examination, the nature and extent of the treatment relationship, and the specialization of the source, in compliance with 20 C.F.R. § 416.927(d).

The ALJ's decision also indicates that she considered the supportability of Dr. Dunn's opinion and the consistency of this opinion with the record as a whole. After noting Dr. Dunn's evaluation and conclusions, the ALJ reviewed Dr. Meyer's May 2004 review of the record evidence. The ALJ noted Dr. Meyer's observation that Plaintiff's long history of substance abuse was not reflected in Dr. Dunn's evaluation (Tr. 23, 195). The ALJ noted Dr. Meyer's observation of contradictions between Plaintiff's daily activities and her reports at the April 2004 evaluation with Dr. Dunn (Id.). The ALJ also noted Dr. Meyer's remark that while Plaintiff alleged significant depression, anxiety, hallucinations, and decreased activities of daily living, the medical records from her treating physician for the period from October 2003 through March 2004 indicated some anxiety in October 2003, but no depression, suicidal ideation, or hallucinations (Tr. 23). In addition, the ALJ cited Dr. Meyer's observation that a November 2003 drug treatment intake assessment reported negative mental status examination findings, and methadone treatment records from November 2003 through March 2004 indicated no significant psychiatric symptoms or reports of physical conditions or symptoms (Id.). Accordingly, the ALJ explained that Dr. Dunn's conclusions regarding stress were given less weight because Plaintiff's allegations at the April 2004 evaluation were not consistent with the medical evidence of record (Id.). Thus, through her articulation of Dr. Meyer's record review and conclusions, the ALJ demonstrated that she considered the supportability of Dr. Dunn's opinion and the consistency of this opinion with the record as a whole, and reasonably determined that Dr. Dunn's conclusions regarding stress were entitled to less weight.

Accordingly, the Court concludes that the ALJ adequately considered and evaluated Dr. Dunn's opinion in accordance with the Social Security Regulations, including the factors set forth in 20 C.F.R. § 416.927(d).

### C. The ALJ's Reliance on the Testimony of the Vocational Expert

Plaintiff also claims that the ALJ erred by failing to pose an accurate hypothetical question to the VE. Specifically, Plaintiff claims that the hypothetical question failed to include the vocational factors of age, education, and work experience.

Once it is determined a claimant does not have the RFC to perform her past relevant work, the burden shifts to the Commissioner to show the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001)*; Cole v. Secretary of Health & Human Servs.*, 829 F.2d 768, 771 (6th Cir. 1987). In determining whether the claimant is able to perform jobs existing in significant numbers in the national economy, the Commissioner must look to the claimant's ability to adjust to these jobs considering the claimant's RFC and vocational factors of age, education, and work experience. 20 C.F.R. § 416.960(c). The testimony of a vocational expert in response to a hypothetical question that accurately portrays the claimant's physical and mental state may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs. *Varley v. Secretary of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

In the present case, the VE first testified about Plaintiff's past relevant work. The ALJ then posed a hypothetical question to the VE asking whether an individual could perform Plaintiff's past relevant work if the individual was limited to simple mental tasks and following

simple directions, and had to avoid working with the public (Tr. 509). The VE responded that such an individual would not be able to perform Plaintiff's past work as a clerk or working on a paint line (Id.). The ALJ next asked the VE to consider an individual who could complete tasks that do not require a fast pace or much interaction with others (Tr. 512). In addition, the individual's work place and setting must be fairly consistent from day to day (Id.). The VE responded that such an individual would be able to perform the jobs of microfilm processor (400 to 450 local jobs) and machine feeder (1,000 to 1,500 local jobs) (Tr. 513).

A review of the hearing testimony shows that the ALJ did not expressly ask the VE to consider Plaintiff's age, education, and work experience in the second hypothetical question posed. However, consideration of these vocational factors would not significantly impact Plaintiff's ability to perform jobs existing in significant numbers in the national economy. Therefore, the ALJ's failure to include these vocational factors in the hypothetical question posed is harmless and not deserving of remand.

To illustrate, the job of machine feeder, DOT 819.686-010, is light work with a specific vocational preparation ("SVP") of 2. Dictionary of Occupational Titles, (4th Ed., Rev. 1991), http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM. An SVP of 2 means that the job is unskilled work, or "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). The Social Security regulations provide that even if a person has no work experience, she may be considered able to do unskilled work because it requires little or no judgment and can be learned in a short period of time. *Id.* at § 416.965(a). Thus, even if Plaintiff had no work experience, the

ALJ could reasonably find her able to perform unskilled work.  Accordingly, consideration of Plaintiff's past relevant work as a clerk or working on a paint line would not impact this finding.

In addition to an SVP of 2, the job of machine feeder requires a reasoning development level of 2, mathematical development level of 1, and language development level of 1.  A reasoning development level of 2 means the individual is able to understand and carry out detailed, but uninvolved written and oral instructions and deal with problems involving few concrete variables in or from standardized situations. Dictionary of Occupational Titles, Appendix C (4th Ed., Rev. 1991).  A mathematical development level of 1 means the individual is able to perform basic arithmetic operations, add and subtract two digit numbers, and multiple and divide 10's and 100's by 2, 3, 4, and 5. *Id.*  A language development level of 1 means the individual is able to recognize the meaning of two and three syllable words, read 95-120 words per minute, print simple sentences, and speak simple sentences. *Id.*  The Social Security regulations provide a list of the levels of education used in disability cases.  The first level is "illiteracy" and means the inability to read or write. 20 C.F.R. § 416.964(b)(1).  The second level is "marginal education" and means the individual has ability in the reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. *Id.* at (b)(2).  Formal schooling at the sixth grade level or less is generally considered to be a "marginal education." *Id.* Plaintiff is a high school graduate, and thus her education level is well above a marginal education level.  Thus, consideration of Plaintiff's education background would not appear to impact on her ability to perform unskilled work.  Moreover, Plaintiff has not pointed to any evidence indicating that she cannot perform simple mathematical skills, basic arithmetic operations, adding and subtracting, and multiplying, and dividing.  And Plaintiff has not pointed

to any evidence indicating that she cannot read, write, and speak simple sentences. Accordingly, consideration of Plaintiff's education background would not impact on the ALJ's finding that Plaintiff can perform the job of machine feeder.

In addition, consideration of Plaintiff's age would not impact on the ALJ's finding that Plaintiff can perform the machine feeder job. Plaintiff has been a "younger person," meaning under age 50, at all times relevant in this case. The Social Security regulations state that if an individual is a younger person, her age is not considered to seriously affect her ability to adjust to other work existing in significant numbers in the national economy.[1] 20 C.F.R. § 416.963(c). Therefore, because Plaintiff has been a younger person at all times during her pursuit of disability benefits, consideration of her age would not significantly impact on the ALJ's finding that she can perform the job of machine feeder.

For the abovementioned reasons, the Court concludes that there is substantial evidence to support the ALJ's determination that Plaintiff can perform jobs existing in significant numbers in the national economy. Accordingly, the Court finds that the ALJ's failure to include the vocational factors of Plaintiff's age, education, and work experience in the hypothetical question posed to the VE is harmless and does not warrant a remand.

---

[1] The Social Security regulations also indicate that persons age 45 to 49 are more limited in their ability to adjust to other work than persons who have not attained age 45, with reference to Rule 201.17 in 20 C.F.R. § 404, Subpt. P, Appendix 2. 20 C.F.R. § 416.963(c). Although Plaintiff was 45 years of age at the time of the ALJ's determination, Rule 201.17 in the Medical-Vocational Guidelines ("Grids") only directs a finding of disabled if the 45 to 49 year old is illiterate or unable to communicate in English, and has previous unskilled or no work experience. A finding of not disabled is directed if the individual is at least literate and able to communicate in English, and has previous unskilled or no work experience. The record demonstrates that Plaintiff is literate and able to communicate in English. Accordingly, Plaintiff would not be considered disabled due to her age under Rule 201.17.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: August 13, 2008